UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GROENEVELD TRANSPORT EFFICIENCY, INC., *et al.*, | ) ) ) | CASE NO. 1:07-cv-1298 |
| | ) ) | JUDGE DONALD C. NUGENT |
| Plaintiffs, | ) ) | |
| v. | ) ) | **DEFENDANT'S MOTION TO DISMISS OR TO STAY ACTION** |
| JAN EISSES, | ) ) | **PENDING OUTCOME OF PARALLEL PROCEEDINGS IN** |
| Defendant. | ) ) ) ) | **ONTARIO, CANADA** |

Defendant Jan Eisses ("Mr. Eisses") moves for an order dismissing or staying the instant case pursuant to Federal Rule of Civil Procedure 12(B) and the doctrine of international abstention because there is a pending, parallel proceeding in Ontario, Canada. As will be shown, this lawsuit is a retaliatory response to litigation initiated by Mr. Eisses that has been pending in Ontario, Canada since February. The doctrine of international abstention provides this Court with discretion to dismiss or stay this action under such circumstances. Courts apply international abstention when there is a parallel suit existing in a foreign jurisdiction, when the foreign jurisdiction is an adequate forum, when doing so would avoid piecemeal litigation, when the action in the foreign jurisdiction was filed first, and when the federal forum is less convenient. As discussed in the accompanying memorandum, all of these factors are present here.

*Melissa L. Zujkowski*
Michael N. Ungar (0016989)
Melissa L. Zujkowski (0078227)
ULMER & BERNE LLP
1660 W. 2nd Street, Suite 1100
Cleveland, Ohio 44113-1448
(216) 583-7000
Fax: (216) 583-7001
mungar@ulmer.com
mzujkowski@ulmer.com
Attorneys for Defendant Jan Eisses

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GROENEVELD TRANSPORT EFFICIENCY, INC., *et al.*, | ) ) ) | CASE NO. 1:07-cv-1298 |
| | ) ) | JUDGE DONALD C. NUGENT |
| Plaintiffs, | ) ) | |
| | ) ) | **MEMORANDUM OF LAW IN SUPPORT OF** |
| v. | ) ) | **DEFENDANT'S MOTION TO DISMISS OR TO STAY ACTION** |
| JAN EISSES, | ) ) | **PENDING OUTCOME OF PARALLEL PROCEEDINGS IN** |
| Defendant. | ) ) ) ) | **ONTARIO, CANADA** |

I. **Introduction**

This case arises out of a dispute between Groeneveld Transport Efficiency International Holding B.V. ("Groeneveld"), parent company to the three named plaintiffs herein, and Defendant Jan Eisses ("Mr. Eisses"). Mr. Eisses is a former employee of CPL Systems Canada, Inc., another wholly owned subsidiary of Groeneveld (hereinafter referred to as "Groeneveld-CPL").[1] On February 8, 2007, Mr. Eisses sued Groeneveld-CPL for breach of contract and constructive dismissal in Ontario, Canada. *See* Statement of Claim, Ontario Superior Court of Justice, Case No. 07-cv-37376PD2, attached as Exhibit B (hereinafter referred to as the "Ontario Litigation" or the "Ontario Action"). In response to the Statement of Claim, Groeneveld-CPL filed a "Statement of Defence,"

---

[1] Mr. Eisses founded CPL Systems Canada, Inc. in 1988. (Declaration of Jan Eisses ("Eisses Decl.), ¶ 2, attached as Exhibit A.) In 2001, Mr. Eisses sold 80% of the shares of CPL Systems Canada, Inc. to Groeneveld. (Id. at ¶ 3). In 2004, he sold the remaining 20% of the company to Groeneveld, at which point it became a wholly owned subsidiary of Groeneveld. (Id.)

1644412v1

2

including a claim for set-off. *See* Statement of Defence, attached as Exhibit C. As explained in detail below, the grounds for the Defence and claim for set-off in the Ontario Litigation are substantially similar to the claims in this action. Although the parties adverse to Mr. Eisses in the two actions are not identical, they are nevertheless closely related, as each is a wholly owned subsidiary of Groeneveld.

## II. Statement of Facts

### A. The Parties

Mr. Eisses is an individual residing in Campbellville, Ontario. (Complaint, ¶ 4). Mr. Eisses owned CPL Systems Canada, Inc. until he sold it to Groeneveld, and thereafter remained employed by it until January of 2007. (Eisses Decl., ¶¶ 3-4). Since 2004, Groeneveld-CPL, an Ontario corporation, has been wholly owned by Groeneveld. (Id. at ¶ 3). Its purpose is to act as the Canadian Groeneveld distributor for automatic greasing systems and parts made by Groeneveld and its subsidiaries. (Id. at ¶ 5).

Mr. Eisses' role in Groeneveld-CPL and Groeneveld's other subsidiaries for the relevant time period is perhaps best described in the Bonus Agreement between Groeneveld-CPL and Mr. Eisses:

> Eisses is employed by CPL as managing director with the co-duty as area manager and is as such responsible for the activities within the territories of Canada and the United States of America of CPL and its Canadian subsidiaries (the CPL Companies as defined below) as well as Groeneveld USA Holding, Inc. and its US Subsidiaries (the US Companies as defined below), which US Companies may also act and generate revenue (as defined below) in Mexico and South America as long as and until Groeneveld decides otherwise.

*See* Bonus Agreement, attached as Exhibit D, Recitals. Groeneveld's "US Subsidiaries," as referenced above, are the three named plaintiffs in this action: Groeneveld Transport

1644412v1

3

Efficiency, Inc.; Groeneveld Atlantic South, Inc.; and Groeneveld Pacific West, Inc. (collectively, the "US Subsidiaries").

### B. The Ontario Action

Mr. Eisses commenced the Ontario Action on February 8, 2007, in response to his constructive dismissal from Groeneveld-CPL on January 28, 2007. (Statement of Claim, ¶ 1a). On November 14, 2006, Groeneveld's executive team asked for a drastic change in direction that, in Mr. Eisses' judgment, would negatively impact the long-term performance of the US Subsidiaries under his management and which included a number of unwise financial targets.[2] (Id., ¶ 19). Because he believed these goals were detrimental to the company, Mr. Eisses protested the changes and offered an alternative proposal which, in his best judgment, would have yielded more desirable results for the US Subsidiaries. (Id., ¶ 20). Before the parties had an opportunity to resolve their disparate viewpoints, however, Groeneveld notified Mr. Eisses that it would, retroactive to January 1, 2007, reduce his base compensation by 30% and decrease his bonus compensation by 87.5%. (Id., ¶ 21). This conduct by Groeneveld constituted a constructive dismissal under the laws of Ontario, and led Mr. Eisses to file the Ontario Litigation.

---

[2]Specifically, Groeneveld instructed Mr. Eisses to reduce payroll costs, which would have required him to fire a number of his key senior employees. (Id., ¶¶ 19-20). In Mr. Eisses' judgment, this would have resulted in a substantial reduction in technical support, training, sales support, and overall business support to the many new service dealers, distributors, existing customers, and newly hired associates. (Eisses Decl., ¶6). Further, the timing of this proposed change was poor, considering the development stage of the US Subsidiaries. (Id.) The proposed change would have resulted in a short term local gain, but would have had a detrimental impact on the growth of the US Subsidiaries in the long term. (Id.) The suggested firing would mean that support promised to service dealers, distributors and new associates could not be provided as promised, and would thus cause increased turnover in personnel. (Id.).

In its response to the Ontario Action, Groeneveld-CPL asserted various claims for executive misconduct against Mr. Eisses that are virtually identical to those asserted here. For example, in the Ontario Action, Groeneveld-CPL asserted that:

1. Mr. Eisses "failed to exercise the care and diligence required of a senior executive," and acted "in breach of his fiduciary and other obligations to the company." (Statement of Defence, ¶ 31);

2. Mr. Eisses committed a "significant act of insubordination" by failing to follow company directives. (Id., ¶ 27);

3. Mr. Eisses "charged personal expenses to the Company." (Id., ¶ 32).

Indeed, Groeneveld-CPL asserts that Mr. Eisses' alleged misconduct "caused financial losses to CPL and unjustly enriched Mr. Eisses and his family." (Id., ¶ 32). Groeneveld-CPL then claims a right to "set-off" because of those claimed financial losses. (Id., ¶ 33).

The parties have commenced discovery in the Ontario Action. Groeneveld-CPL's Response to Mr. Eisses' "Demand for Particulars" further illuminates the parallels between these two actions. (Response to Demand for Particulars, attached as Exhibit E). Specifically, when asked to describe Mr. Eisses' alleged "mismanagement and insubordination," Groeneveld-CPL identified the following:

1. his failure to control expenditures in CPL's North American Operations;

2. his failure to institute appropriate controls to protect inventory in CPL's North American Operations;

3. his use of Company premises, resources, and staff for his personal benefit and the benefit of his family and/or his other businesses;

4. his breaches of the Company's Authorization Table;

5. his actions which placed him in a conflict of interest with CPL, including in his entering a lease for premises in Nova Scotia with a

> company controlled by him on behalf of CPL without the appropriate approval . . . .

(Id., ¶ 1a).

### C. Parallels between Ontario Action and N.D. Ohio Action

Like the Ontario Action, this Complaint was filed in response to Mr. Eisses' departure from Groeneveld-CPL on January 28, 2007. (Complaint, ¶ 12). Instead of calling it a "constructive dismissal," the Complaint instead claims that the departure was a "resignation;" but, there can be no serious dispute that both lawsuits relate to and arise out of the same events. Further, there can be no serious dispute that the two lawsuits involve the same essential underlying dispute and claims. The following chart summarizes the striking similarities between the Ontario Action and this action:

| Claim or Defense Being Advanced by Groeneveld | Ontario Action, Case No. 07-cv-327376PD2 | N.D.Ohio Action, Case No. 07-cv-1298 |
|---|---|---|
| Breach of Duty of Care and Duty of Loyalty | Response to Demand for Particulars, Paragraph 9 | Complaint, Paragraph 19 |
| Failure to properly manage; mismanagement | Response to Demand for Particulars, Paragraph 1(a) | Complaint, Paragraph 13 |
| Failure to structure business in accordance with company policy: refusal to adopt a decentralized business model | Response to Demand for Particulars, Paragraph 1(a)(vii) | Complaint, Paragraph 24(h) |
| Insubordination | Response to Demand for Particulars, Paragraphs 1(c), 2(c) | Complaint, Paragraph 14(d) |
| Failure to perform duties in good faith; conduct not in the best interests of the Company | Statement of Defence, Paragraph 32 | Complaint, Paragraph 14 |
| Engaging in poor business decisions to the detriment of the Company | Statement of Defence, Paragraph 33 | Complaint, Paragraph 14(a) |
| Permitting subordinates to engage in self-dealing | Response to Demand for Particulars, Paragraphs 11(d), (e) | Complaint, Paragraph 18(b) |

1644412v1

6

| Failure to implement proper company controls to safeguard company property | Statement of Defence, Paragraph 34 | Complaint, Paragraph 18(c) |
|---|---|---|
| Engaging in self-dealing | Response to Demand for Particulars, Paragraph 1(a)(v), 14 | Complaint, Paragraph 18(d) |
| Corporate waste | Response to Demand for Particulars, Paragraph 1(a)(iii), 11 | Complaint, Paragraph 29(d) |
| Damages | Statement of Defence, Paragraph 33 | Complaint, Page 15 |

### III. This Complaint should be dismissed or stayed in favor of the Ontario Action based on International Abstention

This Court should dismiss or stay this action based upon the principle of international abstention. International abstention is an extension of state court abstention. In *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), the United States Supreme Court held that federal courts may abstain from hearing a case solely because there is a similar action pending in state court. *Id.* at 818. *Colorado River* abstention rests on considerations of "wise judicial administration" and the general principle against duplicative litigation. *Id.* at 817.

In order for the federal courts to abstain, there must be parallel proceedings in another court. *See Bates v. Van Buren Township*, 2004 US App. LEXIS 25090, *9 (6th Cir. 2004).[3] However, those other proceedings "need not be identical, merely 'substantially similar.'" Additionally, the court considers the following factors in deciding whether to abstain:

> (1) Whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal

---

[3] All unreported cases are attached as Exhibit F.

1644412v1

7

> litigation; and (4) the order in which jurisdiction was obtained . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state court to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. These factors, however, do not comprise a mechanical checklist. Rather, they require a careful balancing of the important factors as they apply in a given case depending upon the particular facts at hand.

*Id.* at *10.

Not surprisingly, courts have extended this doctrine to either dismiss or stay actions pending in federal district courts when the pending parallel proceeding is in another country, employing a similar analysis. *See, e.g., Finova Capital Corp. v. Ryan Helicopters USA, Inc.*, 180 F. 3d 896, 899 (7th Cir. 1999)("Courts usually grapple with the issue of abstention in the context of parallel state court proceedings . . . Nevertheless, in the interests of international comity, we apply the same general principles with respect to parallel proceedings in a foreign court."); *Turner Entertainment Co. v. Degeto Film GMBH*, 25 F. 3d 1512, 1519-1523 (11th Cir. 1994)(staying case in favor of litigation in Germany based on *Colorado River* and international comity); *Supermicro Computer Inc. v. Digitechnic, S.A.*, 145 F. Supp. 2d . 1147, 1149 (N.D. Cal. 2001)("The international abstention doctrine allows a court to stay or dismiss an action where parallel proceedings are pending in the court of a foreign nation"); and *Dragon Capital Partners L.P. v. Merrill Lynch Capital Services, Inc.*, 949 F. Supp. 1123, 1127 (S.D.N.Y. 1997).

In *Finova Capital Corp, supra*, the Seventh Circuit affirmed the trial court's decision to stay a case that was filed months after the defendant filed suit against the plaintiff in St. Lucia. *Id.* at 897, 900-901. In the suit in St. Lucia, the defendant requested a declaration "that it was entitled to ownership of [certain] helicopters on the

payment of certain outstanding sums." *Id.* at 897. The plaintiff responded by filing suit in the federal district court for the Northern District of Illinois, seeking a declaration that it owned the helicopters. *Id.* at 897-898. The defendant in the Illinois action filed a motion to dismiss based upon the pending St. Lucia action. In lieu of dismissal, the district court stayed the Illinois action pending completion of the St. Lucia action. *Id.* at 898.

On appeal, the Seventh Circuit affirmed. *Id.* at 900-901. It observed that "a federal district court should stay a suit and await the outcome of parallel proceedings as a matter of wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of the litigation." *Id.* at 898 (quoting *Colorado River Water Conservation Dist., supra*, at 817).

In affirming the stay, the court first assessed "whether the federal and foreign proceedings are in fact parallel." *Id.* The court stated that "suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in the two fora." *Id.* The court concluded that the two actions were parallel. *Id.* It reasoned that the "respective courts have been asked to resolve the same central issue, namely, who owns the helicopters . . ." *Id.* Also, although the parties were not identical in the two proceedings, they were "substantially similar" because Finova (plaintiff in the US action and non-party in the St. Lucia action) was the financing company of Rotocraft (defendant in the St. Lucia action and non-party in the US action). *Id.* at 897. Accordingly, the court agreed that the proceedings are parallel. *Id.* at 898.

The court next weighed the *Colorado River* factors and found them to weigh in favor of the stay. *Id.* at 898-901. It observed that the St. Lucia court was "the first to exercise jurisdiction over the subject matter of the dispute." *Id.* at 899. The court

placed significance on the fact that the subject matter of the dispute, *i.e.* the helicopters, were located in St. Lucia. *Id.* The court also stated that "since both proceedings turn on the same core issue, this is a case where one can predict with some confidence that the foreign court litigation will probably eliminate the need for any further proceedings in federal court." *Id.* The court concluded that considerations of judicial economy, including "the need to avoid protracted, piecemeal litigation," favored staying the Illinois action. *Id.* The court also found that it did not have a significant interest in resolving the dispute because it had diversity jurisdiction and not federal question jurisdiction. *Id.* at 899-900 ("This is not a case involving the application of legal rights or principles unique to, or specially protected by, federal law"). Based upon the above analysis, the Seventh Circuit affirmed the order to stay the Illinois action.

Similarly, in *Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248 (D. Mass 1999), the court stayed an action in favor of a parallel first-filed case in England. The defendant filed suit in England seeking payment of royalties and other damages arising from a license agreement it entered with the plaintiff. *Id.* at 250. The plaintiff responded by filing suit in the U.S. federal district court alleging fraud, negligent misrepresentation, and promissory estoppel. The court observed that "[t]hese claims arise from the same series of events as those underlying the English claims and conterclaims." *Id.* at 251. The defendant moved to stay on the ground of abstention and international comity.

> In granting the motion, the court relied on the following factors:
>
> (1) the similarity of the parties and issues involved in the foreign litigation; (2) the promotion of judicial efficiency; (3) adequacy of relief available in the alternative forum; (4) issues of fairness to and convenience of the parties,

> counsel, and witnesses; (5) the possibility of prejudice to any of the parties; and (6) the temporal sequence of the filing of the actions.

*Id.* at 252-253. In addition, the court stated that it should demonstrate "a proper level of respect for the acts of the sovereign nations, ensuring fairness to litigants, and effective use of scarce judicial resources." *Id.* at 253.

The *Goldhammer* court held these factors "militate in favor of staying the present action pending the outcome of the English action." *Id.* It reasoned that the parties were similar, although not identical, and the "[f]actual and legal issues in the two cases overlap, although the stated causes of actions are different." *Id.* The Court also found that judicial efficiency favored a stay because, allowing both cases to proceed, would consume judicial resources and "creates a risk of inconsistent judgments." *Id.* at 254. The Court further observed that England was an adequate forum because it was only staying its case and "the federal action provides future opportunity for any relief . . . not available . . . in the English action . . ." *Id.* Finally, the court stated that the "sequence of these actions heavily favors a stay of the federal action." *Id.* at 255.

The same factors which militated in favor of staying the second-filed cases in *Finova* and *Goldhammer* exist here. **First**, the two actions are parallel. They involve substantially similar parties – all Groeneveld-controlled subsidiaries and Mr. Eisses. They also arise from the "same series of events," *i.e.* Mr. Eisses' employment by, and his alleged mismanagement of, Groeneveld's subsidiaries (including Groeneveld-CPL and the US Subsidiaries). (*See* Chart in Section II(C) above). Thus, "one can predict with some confidence that the [Ontario Litigation] will probably eliminate the need for any further proceedings [here]." *Finova, supra*, at 899.

**Second**, the Ontario court was the first to exercise jurisdiction. Mr. Eisses filed the Canadian action on February 8, 2007, while Groeneveld did not file this retaliatory action until three months later on May 3, 2007. Deference should be given to the first-filed action. *Plating Resources, Inc. v. UTI Corporation*, 47 F. Supp. 2d. 899 (N.D. Ohio 1999)("in all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it"); *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F. 2d 1002, 1006 (8th Cir. 1993)("to conserve judicial resources and avoid conflicting rulings, the first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigated has been instituted in separate courts, to the party who first establishes jurisdiction").

In addition to begin filed first, the Ontario action has proceeded towards adjudication. Groeneveld-CPL has filed a Statement of Defence in the Ontario action, asserting its own claim for set-off due to Mr. Eisses' alleged mismanagement of Groeneveld. (Exhibit C, Statement of Defence). Also, the parties have begun to conduct discovery, including Mr. Eisses' propounding of a Demand for Particulars on March 21, 2007, and Groeneveld-CPL's response to the same on May 3, 2007 – curiously, the date of filing of this suit. (Exhibit E, Response to Demand for Particulars).

**Third**, and perhaps most importantly, dismissing or staying the present case will avoid piecemeal litigation and is in the interest of judicial economy and efficiency. Allowing these parallel actions to both proceed would "consume a great amount of judicial . . . and party resources" and "creates the risk of inconsistent judgments." *Goldhammer, supra,* at 254. This is of particular note where, as here, this action was filed on the basis of diversity jurisdiction and there is no federal question

which this Court has any significant interest in resolving. (Complaint, ¶ 5); *Finova, supra*, at 899.

**Fourth**, this forum is less convenient than the Ontario forum. Mr. Eisses is a Canadian citizen who resides in Campbellville, Ontario and maintains offices in Ontario. (Eisses Decl., ¶ 1). Further, since Mr. Eisses operated in Ontario, relevant documents concerning his business decisions and management of both CPL and the US Subsidiaries are located at his offices there. (Eisses Decl., ¶ 4). Although the US Subsidiaries claim to maintain their principal places of business in Ohio, Groeneveld is located in the Netherlands, along with all senior members of its executive team who dealt with Mr. Eisses regarding his employment with Groeneveld-CPL and the matters underlying this dispute. (Id.)

**Finally**, the Ontario Superior Court of Justice of Canada is an adequate forum. *See, e.g., Campbell v. Bridgeview Marina, Ltd.*, 347 F. Supp. 2d 458, 465 (E.D. Mich. 2004)(in case alleging breach of contract and fraud, Canada is an adequate alternative forum); and *Penwest Development Corp. Limited v. The Dow Chemical Co.*, 667 F. Supp. 436, 439 (E.D. Mich. 1987)("Several courts have found Canada to be an adequate alternative forum, and rightly so.")

### IV. Conclusion

For the above reasons, this Court should dismiss this Complaint or stay this matter pending final resolution of the Ontario Action.

Respectfully submitted,

*Melissa L. Zujkowski* (signature)

Michael N. Ungar (0016989)
Melissa L. Zujkowski (0078227)
ULMER & BERNE LLP
1660 W. 2nd Street, Suite 1100
Cleveland, Ohio 44113-1448
(216) 583-7000
Fax: (216) 583-7001
mungar@ulmer.com
mzujkowski@ulmer.com
Attorneys for Defendant Jan Eisses

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2007, a copy of the foregoing was served upon all counsel of record via this Court's electronic notification system:

*Melissa L. Zipkowski*
One of the Attorneys for Defendant
Jan Eisses

1644412v1
17999.00433