07-CV-327376 PD 2

Court File No.

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE

B E T W E E N:



**JAN EISSES**

**Plaintiff**

- and -

**CPL SYSTEMS CANADA, INC.**

**Defendant**

## STATEMENT OF CLAIM

TO THE DEFENDANT(S)

A LEGAL PROCEEDING HAS BEEN COMMENCED AGAINST YOU by the plaintiff. The claim made against you is set out in the following pages.

IF YOU WISH TO DEFEND THIS PROCEEDING, you or an Ontario lawyer acting for you must prepare a statement of defence in Form 18A prescribed by the Rules of Civil Procedure, serve it on the plaintiff's lawyer or, where the plaintiff does not have a lawyer, serve it on the plaintiff, and file it, with proof of service, in this court office, WITHIN TWENTY DAYS after this statement of claim is served on you, if you are served in Ontario.

If you are served in another province or territory of Canada or in the United States of America, the period for serving and filing your statement of defence is forty days. If you are served outside Canada and the United States of America, the period is sixty days.

Instead of serving and filing a statement of defence, you may serve and file a notice of intent to defend in Form 18B prescribed by the Rules of Civil Procedure. This will entitle you to ten more days within which to serve and file your statement of defence.

IF YOU FAIL TO DEFEND THIS PROCEEDING, JUDGMENT MAY BE GIVEN AGAINST YOU IN YOUR ABSENCE AND WITHOUT FURTHER NOTICE TO YOU. If you wish to defend this proceeding but are unable to pay legal fees, legal aid may be available to you by contacting a local legal aid office.

Page...2

Date Feb 8/07                    Issued by  M. Branton
                                            Local registrar

                                 Address of court office:
                                 393 University Avenue
                                 Toronto, Ontario
                                 M5G 1E6

TO:    **CPL SYSTEMS CANADA, INC.**
       7065 Twiss Road
       R.R. #3
       Campbellville, Ontario
       L0P 1B0

# CLAIM

1.   The plaintiff, Jan Eisses, claims:

 a.   a declaration that he was constructively dismissed from his employment without lawful cause and without proper notice or compensation in lieu thereof on January 28, 2007;

 b.   damages for breach of contract and wrongful dismissal in the sum of $2,950,000.00;

 c.   an extension of the notice period by an additional eight months on account of the defendant's conduct as pleaded herein and damages thereon, or in the alternative, aggravated damages in the sum of $879,000;

 d.   reimbursement for any and all expenses the plaintiff incurs in an effort to mitigate the damages arising from the loss of his employment in the sum of $15,000.00 or such other amount as may be proven at trial;

 e.   prejudgment interest in accordance with section 128 of the *Courts of Justice Act*, R.S.O. 1990, c. C.43, as amended;

 f.   postjudgment interest in accordance with section 129 of the *Courts of Justice Act*;

 g.   the costs of this proceeding, plus all applicable goods and services tax thereon; and

 h.   such further and other relief as to this Honourable Court may seem just.

Page...4

**The Parties**

2.    The plaintiff is a businessman who resides in the Town of Campbellville in the Province of Ontario.

3.    CPL Systems Canada, Inc. ("CPL") is incorporated pursuant to the laws of the Province of Ontario.  Its fiscal year runs concurrently with the calendar year.  CPL advertises itself as an industry leader in automatic greasing systems in Canada and has a nation-wide network of dealers and service locations.

**The Plaintiff's Employment with CPL**

4.    The plaintiff founded CPL in 1988 and was employed by it from the date of its inception to and including January 28, 2007.  At all material times CPL acted as the Canadian distributor for automatic greasing systems and parts made by a subsidiary of Groeneveld Transport Efficiency International Holding B.V. ("Groeneveld"), a company based in the Netherlands.

5.    In 2001, 80% of CPL's shares were sold to Groeneveld.  In 2004, Groeneveld exercised an option to purchase the remaining shares of CPL and CPL became a wholly owned subsidiary of Groeneveld.

6.    After the sale of CPL to Groeneveld, the plaintiff continued to be employed by CPL as its President and was responsible for all aspects of CPL's business operations in Canada.

7.      Under his leadership, CPL experienced significant and consistent growth in its sales and market share.  The plaintiff was so successful in managing CPL that in 2003 Groeneveld asked him to take over responsibility for the distribution, sale, marketing and service of Groeneveld products throughout North and South America.

8.      Although the plaintiff reported to Groeneveld's executive committee in the Netherlands, he had almost complete autonomy in managing the North and South American business including but not limited to the preparation of budgets, establishing sales targets and the hiring and firing of employees.

**The Plaintiff's Compensation**

9.      Between 2001 and 2003, the plaintiff's compensation consisted of a base salary of $175,000, a generous employment benefits package and a car allowance.

10.     From 2004 to 2006, the plaintiff's base salary increased steadily to the following amounts:

|      |          |
|------|----------|
| 2004 | $212,500 |
| 2005 | $280,000 |
| 2006 | $300,000 |

11.     For the years after 2006, it was agreed that the plaintiff would receive annual increases in his base salary of 3% to account for inflation and cost of living increases.

12.   After Groeneveld asked the plaintiff to take over control of its North and South American operations, it implemented a formal bonus agreement that governed his bonus entitlement for the fiscal years 2004 - 2009.  The bonus compensation was in addition to the base salary, employment benefits and car allowance he received.

13.   Under the terms of the bonus agreement, the plaintiff's bonus entitlement was to be calculated in accordance with a pre-set formula which was dependant on a number of factors including but not limited to the net profits and external increases in revenue of CPL and other Groeneveld subsidiaries which carried on business throughout North and South America.  The bonus payment and amount were not discretionary.

14.   Due to the plaintiff's hard work and effective management, he was able to grow CPL's business and Groeneveld's North and South American business significantly. This resulted in greater revenue and profit for Groenveld and greater bonus opportunity for the plaintiff.  For fiscal 2004 and 2005 the plaintiff received bonus compensation of $222,000 and $285,900 respectively, although those amounts were not actually paid by CPL until 2006.

15.   2006 was a particularly successful year for CPL and Groeneveld's North and South American operations, and by extension the plaintiff.  During that year the plaintiff secured a number of very large contracts and also obtained "approved vendor" status for a number of international corporations. Without the plaintiff's skill,

contacts and hard work, CPL and Groeneveld would not have been awarded these contracts nor would they have obtained "approved vendor" status.

16.     Based on the formula set out in the bonus agreement, the plaintiff earned in excess of $300,000 in bonus compensation in fiscal 2006.  The plaintiff has not received any payments on account of his 2006 bonus compensation.

17.     The contracts secured by the plaintiff in 2006 will result in significantly higher revenues for CPL and Groeneveld's North and South American operations in 2007 and beyond.  The increase in revenues resulting from these contracts will cause the bonus compensation owed to the plaintiff to increase exponentially in the next few years.

**The Constructive Dismissal**

18.     In early 2007 the defendant became concerned about the amount of bonus compensation the plaintiff was earning.   By this time CPL's business and Groeneveld's North and South American business had become established and Groeneveld wanted to find ways to reduce the compensation earned by the plaintiff while at the same time increasing its revenues.

19.     In January, 2007, Groeneveld's executive team demanded that the plaintiff execute a business plan that included a number of unrealistic financial targets.  The targets insisted upon by Groeneveld, while favourable to it, would have had a direct negative impact on the bonus compensation paid to the plaintiff.  If the plaintiff was

permitted to continue with the business plan which had been used in the past, both he and Groeneveld would have continued to realize healthy incomes.

20.   At the same time, Groeneveld instructed the plaintiff to reduce payroll costs by $1,000,000 which would require that he fire a number of his key senior employees. The plaintiff had always had complete control over staffing decisions and Groeneveld's interference in this area represented a reduction in the plaintiff's overall responsibilities.  The plaintiff protested the changes insisted upon by Groeneveld and tried to explain that the termination of senior employees would detrimentally affect CPL's ability to run its business in a profitable and efficient manner.

21.   In response to the plaintiff's opposition and in an effort to reduce his compensation Groeneveld advised the plaintiff that his base salary was reduced to $218,500.00 per annum and that his bonus compensation was going to be reduced to and capped at $37,500.00 per annum.  These unilateral changes imposed by the defendant were made retroactive to January 1, 2007 and represented a 30% decrease in the plaintiff's base salary and an 87.5% decrease in his bonus compensation.

22.   Despite the significant decrease in the plaintiff's compensation, no changes were made to his responsibilities.  In fact, Groeneveld's instructions to terminate the employment of a number of his senior staff would have caused the plaintiff to

assume additional duties previously performed by those employees. This would have resulted in an overall increase in his workload.

23.   The defendant's decision to substantially decrease the plaintiff's compensation while at the same time requiring him to assume additional duties was unlawful and in breach of the terms of his employment and the bonus agreement.

24.   As a consequence of the defendant's conduct, the plaintiff could not continue his employment and was left with no realistic alternative but to unwillingly leave his employment effective January 28, 2007. The plaintiff asserted at that time that the defendant's actions amounted to a constructive dismissal but offered to remain with the company to assist in the transition to new management. The defendant took the position that the plaintiff had resigned his employment as of January 28, 2007.

25.   Notwithstanding that the plaintiff worked for CPL up to and including January 28, 2007, he has only received payments on account of his base salary up to January 19, 2007. Groeneveld has instructed CPL to not pay the plaintiff's base salary for the last 9 days that he worked.

**Damages Resulting From Groeneveld Charging Higher Costs to North American Subsidiaries**

26.   In late 2006, the plaintiff discovered that, unbeknownst to him Groeneveld was supplying CPL and the North American subsidiaries managed by the plaintiff with product at a higher cost than it charged to its subsidiaries in Europe. This was contrary to and in breach of an agreement Groeneveld made with the plaintiff which

Page...10

provided that the costs charged to CPL would be the same as the costs charged to other subsidiaries. This caused CPL and the North American subsidiaries of Groeneveld to show less profit than they would have if the agreement had not been breached. As a consequence, the plaintiff was paid less bonus compensation than he should have received as his bonus compensation is based, in part, on the profits earned by CPL and Groeneveld's North American subsidiaries.

27.    But for Groeneveld's breach of its agreement to charge CPL the same costs charged to European subsidiaries, the plaintiff would have received additional bonus compensation in 2004 and 2005 of approximately $67,500 and $100,000 respectively.

**The Plaintiff's Earned But Unpaid Bonus**

28.    As of the date the plaintiff was constructively dismissed, he had not received any bonus compensation for fiscal 2006 or the 28 days of fiscal 2007 that he worked. The defendant's failure to pay the plaintiff the bonus compensation he earned during 2006 and 2007 is unlawful. The defendant had the benefit of the plaintiff's services during these periods and the plaintiff is entitled to be compensated for his efforts.

29.    But for the termination of the plaintiff's employment, he would have received $300,000.00, more or less, on account of his 2006 bonus and $23,014, more or less, for the 28 days that he worked in fiscal 2007.

Page...11

**Notice Period**

30.     Throughout his employment with the defendant, the plaintiff proved himself to be a loyal, conscientious and diligent employee who served the best interests of his employer to the best of his ability.

31.     The plaintiff's employment was of indefinite duration, and is consequently terminable only upon the provision of reasonable notice or the payment of compensation in lieu thereof, in the absence of lawful cause.

32.     The plaintiff has been employed in a senior position in the same industry for almost the whole of his working life.  It will be exceedingly difficult, if not impossible, to find a comparable position with comparable compensation in that industry, or any other industry for which the plaintiff is suited by reason of his education, skills and experience.

33.     The skills the plaintiff has learned over that period of time are not readily transferable to a new industry and there are very few companies which sell automatic greasing systems.  This fact will limit the plaintiff's opportunities for re-employment within that industry as it is unlikely that a senior executive position in his area of expertise will become available at any time in the foreseeable future.  As a consequence, the plaintiff will likely have to retrain and seek employment outside of the only industry he has ever worked in.

34.     Because the plaintiff founded CPL he occupied a very senior position, notwithstanding that he has only a college education.  Most if not all other

Page...12

employers seeking to hire senior executives only consider candidates that have, at the very least, a university education. Employers will view the plaintiff as a less desirable candidate compared to those who have university and post graduate degrees. This will impair the plaintiff's ability to compete for positions and will add to the length of time it will take him to re-employ.

35.  Given all of the relevant circumstances, the plaintiff is entitled to compensation in lieu of notice for a period of 24 months.

## The Damages Suffered by the Plaintiff Over the Notice Period

36.  The plaintiff is entitled by agreement with the defendant to a 3% annual increase in his base salary. These increases would have resulted in the plaintiff receiving a base salary of $309,000 in 2007 and $318,270 in 2008.

37.  As a result of the rapid growth in CPL's revenues and the facts set out in paragraphs 14 to 17, the plaintiff's bonus compensation would have continued to increase substantially over the next 24 months. Based on CPL's projected revenue growth over the notice period, the plaintiff expects that he would have received bonus compensation of between $440,000 and $800,000.00 in fiscal 2007, and no less than $1,000,000.00 in fiscal 2008.

**The Plaintiff's Claim for an Extension of the Notice Period or Aggravated Damages**

38.   The plaintiff was unceremoniously driven out of the company he founded.  The defendant's conduct in that regard was highhanded, callous, humiliating and in breach of contractual and other duties it owed to him.

39.   The defendant attempted to unlawfully force the plaintiff to accept an annual compensation package that was significantly below what had been paid to him in the past.  The defendant did so to earn greater revenues for itself while at the same time knowingly and willfully decreasing the plaintiff's opportunity to earn income contrary to the terms of the written bonus agreement.

40.   The defendant has also refused to pay the plaintiff compensation earned by him prior to the termination of his employment.  The refusal to make these payments is arbitrary, unlawful and designed to force the plaintiff to accept a settlement which is far below his lawful entitlement.  Its assertion that the plaintiff was not constructively dismissed and that he resigned his position is specious.

41.   As a consequence of the defendant's conduct, the plaintiff claims that he is entitled to an extension of the notice period of no less than 8 months.  In the alternative, the plaintiff claims aggravated damages in the sum of $879,000.00.

**Mitigation Expenses Employment Benefits and Car Allowance**

42.   As part of the plaintiff's compensation package, he received a monthly car allowance of $800 and employment benefits including dental, health, life and

Page...14

disability insurance. The defendant discontinued these forms of compensation upon the termination of the plaintiff's employment and he claims damages for the loss of his employment benefits and car allowance over the period of reasonable notice and any extension of the notice period which may be awarded.

43.  Additionally, the plaintiff will incur expenses in the course of mitigating his income loss which he would not otherwise have incurred and he seeks reimbursement for these expenses in addition to any other damages claimed.

The plaintiff proposes that this action be tried in the City of Toronto.

February 7, 2007

**TEPLITSKY, COLSON** LLP
Barristers
70 Bond Street
Suite 200
Toronto, Ontario
M5B 1X3

Robert L. Colson  (187170)
*Robert L. Colson Professional Corporation
David Greenwood(46888D)
Tel : (416) 365-9320
Fax: (416) 365-7702

Solicitors for the Plaintiff
Jan Eisses

G:\Clients\Eisses v. CPL Systems et al #21462\Pleadings\Statement of Claim.v2.wpd

EISSES, JAN
Plaintiff

CPL SYSTEMS CANADA, INC.
Defendant

Court File No. 07-CV-327376 PD 2

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**

PROCEEDING COMMENCED AT TORONTO

STATEMENT OF CLAIM

**TEPLITSKY, COLSON** LLP
Barristers
70 Bond Street
Suite 200
Toronto, Ontario
M5B 1X3

Robert L. Colson (18717O)
David Greenwood (46888D)
Tel : (416) 365-9320
Fax: (416) 365-7702

Solicitors for the Plaintiff
Jan Eisses