PL01151

# ANNUAL BONUS AGREEMENT

Parties:

CPL Systems Canada, Inc.

Jan Eisses

*March 2006*

## CONTENTS

1. Interpretation ..................................................................................................................... 1
2. Representation of GPL .................................................................................................... 5
3. Financial Targets .............................................................................................................. 5
4. Basic principle of (entitlement) to a Bonus .................................................................... 6
5. Formula for determining (entitlement to) a Bonus ........................................................ 6
6. Turnover and Net Profits ................................................................................................. 7
7. Annual Accounts ............................................................................................................... 7
8. Calculation and payment of the Bonus .......................................................................... 8
9. Entitlement to a Bonus in case of termination of Eisses' employment ...................... 9
10. Confidentiality ................................................................................................................. 10
11. Miscellaneous ................................................................................................................. 11
12. Governing law ................................................................................................................. 12
13. Acknowledgement by Eisses ........................................................................................ 12

This agreement ("**Agreement**") is made on 20 March 2006 by and between:

I. **CPL Systems Canada, Inc.**, a Corporation organized under the laws of Ontario, Canada, with its principal offices at 7065 Twiss Road, R.R.#3, Campbellville, Ontario L0P 1B0, in the Regional Municipality of Halton, ("**CPL**");

II. **Jan Eisses**, an individual residing at 7053 Twiss Road, R.R#3, Campbellville, Ontario L0P 1 1B0, in the Regional Municipality of Halton, Canada ("**Eisses**");

**Recitals:**

A. Eisses is employed by CPL as managing director with the co-duty as area manager and is as such responsible for the activities within the territories of Canada and the United States of America of CPL and its Canadian subsidiaries (the CPL Companies as defined below) as well as Groeneveld USA Holding Inc. and its American subsidiaries (the US Companies as defined below), which US Companies may also act and generate revenue (as defined below) in Mexico and South America as long as and until Groeneveld (as defined below) decides otherwise;

B. Groeneveld Transport Efficiency International Holding B.V. is the sole shareholder of CPL;

C. CPL and Eisses have negotiated the terms and conditions of an annual incentive bonus compensation to which Eisses shall be entitled separate from and in addition to the salary as provided for in his employment agreement with CPL;

D. CPL and Eisses consider such incentive bonus compensation to be in their mutual interests;

E. In this Agreement CPL and Eisses wish to lay down the terms upon which and the conditions subject to which Eisses shall be entitled to such annual incentive bonus compensation.

**It is hereby agreed as follows:**

**1. Interpretation**

1.1. In this Agreement the following words shall, unless the context requires otherwise or unless specified otherwise in this Agreement, have the following meanings:

Agreement: this agreement including the Schedules;

Average Exchange Rate: the average of the exchange rates of the currency to be converted and the Leading

| | |
|---|---|
| | Currency in the Relevant Year calculated on the basis of the monthly currency rates as at the 15th day of each calendar month of the Relevant Year as published at the web site: www.oanda.com/convert/fxhistory; |
| Bonus: | the potential and conditional annual incentive bonus to which Eisses may be entitled upon the terms and subject to the conditions laid down in this Agreement; |
| Business Day: | any days (other than a Saturday or Sunday) on which banks are open for normal banking business in Ontario, Canada; |
| Cause: | behaviour of Eisses which is adverse to interests of CPL, the CPL Companies, Groeneveld USA Holding or the US Companies, including, without limitation, Eisses' dishonesty, grossly negligent misconduct, wilful misconduct, disloyalty, acts of bad faith, neglect of duty, material breach of this Agreement or his employment agreement with CPL, or any conduct, behaviour sufficient to constitute just case for termination of employment at law. For the purposes of this Agreement, Cause does not include: not meeting the agreed upon Financial Targets as defined in clause 3; |
| Costs: | as defined in clause 6.2.c; |
| CPL Accounts: | the consolidated annual accounts of CPL (and therefore including the CPL Companies) relating to a Financial Year and which shall be prepared in accordance with clauses 6.3 and 6.4; |
| CPL Companies: | the following Canadian subsidiary of CPL: Fleetwise Maintenance Systems Inc.; |
| CPL Profit and Loss Account: | the profit and loss account of CPL on a consolidated basis relating to a Financial Year and forming part of the CPL Accounts and which shall be prepared taking into account clauses 6.3 and 6.4; |

| | |
|---|---|
| External Revenue | the aggregate revenue realized (a) exclusive (i) Intra Group Revenue and (ii) revenue outside the territories of the United States of America or Canada, (b) but including generated revenue in Mexico and South America as long as and until Groeneveld decides otherwise; |
| Financial Year: | a financial year of CPL or Groeneveld USA Holding which both run from 1 January to 31 December (inclusive); |
| Groeneveld: | Groeneveld Transport Efficiency International Holding B.V., a private company with limited liability, organized under the laws of the Netherlands; |
| Groeneveld USA Holding: | Groeneveld USA Holding, Inc., a corporation organized under the laws of Ohio, United Sates of America ; |
| Group Companies: | all the subsidiaries and group companies (as meant in articles 24a and 24b of Book 2 of the Dutch Civil Code) of Groeneveld; |
| Integrated P&L Account: | as defined in clause 6.1; |
| Intra Group Revenues: | revenues made through deliveries to Group Companies; |
| Leading Currency: | if in a Relevant Year (i) the aggregate External Revenue realized by Groeneveld USA Holding and the US Companies exceeds the aggregate External Revenue realized by CPL and the CPL Companies, the Leading Currency for such Relevant Year shall mean: US Dollars, while if (ii) the aggregate External Revenue realized by Groeneveld USA Holding and the US Companies is less than the aggregate External Revenue realized by CPL and the CPL Companies, the Leading Currency for such Relevant Year shall mean: Canadian Dollars; |

March 7th 06

| | |
|---|---|
| | In order to determine which of (i) the aggregate External Revenue of Groeneveld USA Holding and the US Companies on the one hand and (ii) the aggregate External Revenue realized by CPL and the CPL Companies on the other hand, is the biggest in a Relevant Year, the aggregate External Revenue of Groeneveld USA Holding and the US Companies of such Relevant Year shall be converted into Canadian Dollars against the Average Exchange Rate. |
| Net Profits: | as defined in clause 6; |
| Net Profits Percentage: | the Net Profits in the Relevant Year as percentage of the External Revenue in the Relevant Year; |
| Parties: | Eisses and CPL, and "Party" means any of them; |
| Percentage Points of Increase in External Revenue: | the percentage points by which the External Revenue of the Relevant Year has increased compared to the External Revenue of the Previous Year; |
| | In the event that the Leading Currency of a Relevant Year is a different currency than the Leading Currency of the Previous Year, for determining the Percentage of Increase in Revenue, the External Revenue of the Previous Year shall be converted into the Leading Currency of the Relevant Year using the Average Exchange Rate of the Previous Year. |
| Previous Year: | the Financial Year prior to the Relevant Year; |
| Relevant Year: | as defined in clause 4.1; |
| Schedule: | a schedule to this Agreement; |
| Termination Date: | the date of termination of Eisses' employment with CPL; |

March 7th 06

| | |
|---|---|
| Termination Year: | the Financial Year in which the termination of Eisses' employment with CPL takes place; |
| Revenue: | as defined in clause 6; |
| US Accounts: | the consolidated annual accounts of Groeneveld USA Holding (and therefore including the US Companies) relating to a Financial Year and which shall be prepared in accordance with clauses 6.3 and 6.4; |
| US Companies: | the following U.S. subsidiaries of Groeneveld USA Holding: (i) Groeneveld Pacific West, Inc. (ii) Groeneveld Atlantic South, Inc. and (iii) Groeneveld Transport Efficiency, Inc. |
| US Profit and Loss Account: | the profit and loss account of Groeneveld USA Holding on a consolidated basis relating to a Financial Year and forming part of the US Accounts and which shall be prepared taking into account clauses 7.1 and 7.2. |

2. **Representation of CPL**

2.1. In order to avoid any conflicts of interests between CPL and Eisses as employee and managing director of CPL, the Parties agree that in connection with this Agreement (including the performance of obligations under this Agreement and the exercise of rights under this Agreement) CPL shall be represented exclusively by Groeneveld. For that purpose, Mr. Jan Bruinenberg, director to CPL will sign this Agreement as CPL's sole representative for the purpose of and in connection with this Agreement. Eisses, if then a member of the Board, shall abstain from all actions in connection with this Agreement or the Parties' performance hereunder.

3. **Financial Targets**

3.1. Eisses' target is to realise an annual increase in External Revenue with respect to CPL, the CPL Companies, Groeneveld USA Holding and the US Companies of at least 15% (fifteen per cent). In addition, it is also Eisses' target to realise annual Net Profits with respect to CPL, the CPL Companies, Groeneveld USA Holding and the US Companies of at least 10% (ten per cent) of the annual External Revenue.

3.2. Eisses shall use his best efforts to realise the targets set out in clause 3.1.

4. **Basic principle of (entitlement) to a Bonus**

4.1. Whether Eisses shall be entitled to the Bonus over a specific year as well as (if applicable) the amount of such Bonus shall be determined as soon as both the CPL Accounts and the U.S. Accounts of a closed Financial Year (the "**Relevant Year**") have been adopted by the general meeting of shareholders of CPL and Groeneveld USA Holding respectively and shall depend on (i) the increase of the External Revenue in the Relevant Year compared to the External Revenue realized during the Previous Year and (ii) the Net Profits in the Relevant Year as percentage of the External Revenue in the Relevant Year.

4.2. The first Financial Year which could give rise to entitlement to a Bonus is Financial Year 2004.

4.3. Subject to clauses 9.4 and 9.5, the last Financial Year that could give rise to entitlement to a Bonus is Financial Year 2009.

5. **Formula for determining (entitlement to) a Bonus**

5.1. For determining whether Eisses shall be entitled to a Bonus as well as (if applicable) the amount of such Bonus the following formula shall apply:

(Percentage Points of Increase in External Revenue) divided by 15 = A

A times Net Profits Percentage times 100 = B

B times 1.2 = C

C% of the Net Profits = Bonus

Provided that:

- In case C is less than 4 (four), Eisses shall <u>not</u> be entitled to a Bonus.

- In case C exceeds 15 (fifteen), the Bonus shall be calculated <u>as if</u> C were 15 (in other words: the Bonus shall never exceed 15% of the Net Profits).

5.2. For a correct understanding of the formula described in clause 5.1, this **clause 5.2** sets forth an example calculation.

Assuming the Percentage Points of External Increase in Revenue amounts to 17 and the Net Profits Percentage amounts to 8%, the calculations of the Bonus will be as follows:

A = 17/15 = 1.133

B = 1.133 x 8% x 100 = 9.066

C = 9.066 x 1.2 = 10.87

Bonus = 10.87% of Net Profits

## 6. Revenue and Net Profits

6.1. For the purpose of calculating Bonuses, the Revenue and the Net Profits shall be derived from integrated profit and loss account ("**Integrated P&L Account**") reflecting both CPL and the CPL Companies as well as Groeneveld USA Holding and the US Companies and which Integrated P&L Account shall be prepared by Groeneveld as representative of CPL for this purpose especially in connection with this Agreement.

6.2. For the purposes of this Agreement, the Integrated P&L Account shall be prepared as follows:

   a. the (consolidated) CPL Profit and Loss Account forming part of the adopted CPL Accounts of the Relevant Year and the (consolidated) US Profit and Loss Account forming part of the adopted US Accounts of the Relevant Year will (to extent not already reflected in the Leading Currency) be converted into the Leading Currency on the basis of the Average Exchange Rate; and

   b. following the conversion referred to under a. above, the items of both profit and loss accounts will be added up; and

   c. the Intra Group Revenue to group companies, other than CPL and the CPL Companies, as well as Groeneveld USA Holding and the US Companies, will be deducted; the costs relating to such revenue ("**Costs**") will be added; and

   d. the Intra Group Revenue between CPL and the CPL Companies, as well as Groeneveld USA Holding and the US Companies will be deducted for the same amount from the revenue and the Costs; and

   e. the revenue realized by CPL and the CPL Companies, as well as Groeneveld USA Holding and the US Companies in territories outside of the United States of America and/or Canada will be deducted , exclusive Mexico and South America, will be added (as long as and until Groeneveld decides otherwise); the Costs for the revenue in the territories outside of the United States of America and/or Canada, exclusive Mexico and South America, will be added (as long as and until Groeneveld decides otherwise ; and

   f. the Costs will be calculated on the basis of the accounting standards used in the CPL and US Accounts for the Relevant Year; and

   g. the bonus, which has been charged as expense to the (consolidated) CPL and US Profit and Loss Accounts will be deducted; and

   h. the corporate tax effect of the adjustments, as defined in clauses 6.2.c, d, e, g and h shall be added (for the calculated decrease in profits before taxation) or deducted (for the calculated increase in profits before taxation); the corporate tax effect will

be calculated on basis of the effective tax rate, in the P&L Account of the country where the adjustment is made.

6.3. The CPL Accounts, which shall include a consolidated balance sheet per the end of the relevant Financial Year and the CPL Profit and Loss Account reflecting such year, shall be prepared in accordance with the accounting standards, methods and principles of Groeneveld, which have been consistently applied by CPL in the three years prior to this Agreement.

The US Accounts, which shall include a consolidated balance sheet per the end of the relevant Financial Year and the US Profit and Loss Account reflecting such year, shall be prepared in accordance with the accounting standards, methods and principles of Groeneveld and which have been consistently applied by Groeneveld USA Holding in the three years prior to this Agreement.

6.4. The CPL Accounts and the US Accounts shall be prepared by the Board of Management of CPL respectively Groeneveld USA Holding and audited by CPL's accountants and Groeneveld USA Holding's accountants respectively. CPL's accountants and Groeneveld USA Holding's accountants shall be appointed by Groeneveld. The scope of the audits will be determined by Groeneveld.

## 7. Calculation and payment of the Bonus

7.1. As soon as the CPL Accounts and the US Accounts have been adopted by the general meetings of shareholders of CPL and Groeneveld USA Holding respectively, Groeneveld as representative of CPL for this purpose shall - taking into account the provisions of this Agreement - prepare the Integrated P&L Account and calculate and determine whether Eisses shall be entitled to a Bonus relating to the Relevant Year and (if applicable) the amount of such Bonus. For the purpose of said calculation, Groeneveld (in his capacity of representative of CPL) and its advisors shall be granted full and unlimited excess to such information concerning CPL, the CPL Companies, Groeneveld USA Holding and the US Companies as Groeneveld - at its sole discretion - deems necessary or useful and Eisses shall observe all Groeneveld's reasonable requests for additional information.

7.2. Within 20 Business Days after the first day that both the CPL Accounts and the US Accounts have been adopted, Groeneveld as representative of CPL for this purpose shall inform Eisses whether he shall be entitled to a Bonus relating to the Relevant Year and (if applicable) the amount of such Bonus. If Eisses is entitled to a Bonus, CPL shall - taking into account clause 8.3 - pay such Bonus within the period of 20 Business Days referred to in the previous sentence of this clause 8.2. The CPL Accounts and the US Accounts will be adopted ultimately on 1 May of the year after the Relevant Year.

7.3. The Bonus shall be paid in Canadian Dollars. If, in accordance with the provisions of this Agreement, the Bonus has been calculated in another currency, the amount of the

Bonus will be converted into Canadian Dollars. The applicable exchange rate will be the actual exchange rate at the date of payment.

7.4. If at any time it appears that the financial information or data on the basis of which a Bonus has been calculated (and has been paid to Eisses) was wrong, inadequate or incomplete and the use of the right and complete financial information or data would have resulted in a higher or lower Bonus (or no Bonus), either CPL and/or Eisses shall have the right to reclaim the difference (the relevant amount may be set off against any financial obligation of CPL vis-à-vis Eisses including salary payments). In such event, the fact that CPL has calculated the Bonus or had access to relevant information when calculating the Bonus, cannot in any way be held against CPL. The right to reclaim (as defined in the first sentence of this clause 7.4) shall only arise if either CPL and/or Eisses claim under such right to reclaim, in writing and substantiated detail to the other Party within six (6) months after the CPL Accounts and the US Accounts have been adopted (as referred to in clause 7.2).

## 8. Entitlement to a Bonus in case of termination of Eisses' employment

8.1. In case Eisses' employment with CPL terminates or is terminated:

   a. by reason of Eisses' death; or

   b. for the reason that Eisses is unable to perform the essential functions of his job, with all reasonable accommodations required by law, for a continuous period of six (6) months as a result of a disability or illness; or

   c. by CPL for other reasons than a Cause,

   Eisses shall (and subject to the provisions of this clause 9.1) be entitled to a Bonus relating to the Termination Year.

   In determining whether Eisses is actually entitled to a Bonus and (if applicable) the amount of such Bonus, the provisions of clauses 4 up to and including 7 shall apply, provided however that:

   a. The Relevant Year shall be the Termination Year;

   b. The Bonus (if any) shall be divided by 365 and the outcome thereof shall be multiplied by the number of days of the Termination Year up to the Termination Date (exclusive); the outcome shall be the Bonus for the Termination Year.

8.2. In case Eisses' employment with CPL:

   a. Is terminated by CPL for Cause; or

   b. Is terminated by Eisses,

   Eisses shall not be entitled to a Bonus relating to the Termination Year.

8.3. Termination of Eisses' employment shall not affect his entitlement to Bonuses (if any) relating to Financial Years prior to the Termination Year.

March 7th of

8.4. In no event and irrespective of the cause of termination shall Eisses be entitled to a Bonus relating to Financial Years following the Termination Year. With the execution of this Agreement Eisses unconditionally agrees that in case of termination of Eisses' employment (irrespective of the cause or grounds of such termination and irrespective upon whose initiative termination has taken place) Eisses shall be considered to have fully waived any entitlement to Bonuses relating to Financial Years following the Termination Year. With the execution of this Agreement Eisses unconditionally agrees that the fact that - as a result of termination of Eisses' employment with CPL (irrespective of the cause or grounds of such termination and irrespective upon whose initiative termination has taken place) - Eisses shall no longer have the possibility to "earn" Bonuses in future years, shall never result in - or be a valid argument on Eisses' part to claim - additional, other or higher compensation than Eisses would be entitled to if this Agreement were not in place between the Parties and by executing this Agreement Eisses unconditionally waives the rights he has in that respect.

8.5. If Eisses is assigned a different position or job with CPL (or any of the CPL Companies, Groeneveld, a Group Company, Groeneveld USA Holding or any of the US Companies) due to the fact that CPL is not satisfied with Eisses' functioning as area manager for Canada and/or the United States of America, Eisses will in accordance with the content and structure of this Agreement be entitled to a Bonus relating to the Financial Year for the period up to the date (Assignment Date) of which he was assigned the new position or job, but Eisses shall not be entitled to a Bonus relating to the Financial Year from the period after the date (Assignment Date) of which he was assigned the new position or job, or to any Bonuses for Financial Years to follow. By accepting the different position or job, Eisses shall be considered to have fully waived (i) any entitlement to Bonuses referred to in the previous sentence (ii) any right he may have to any kind of compensation, damages or payment for no longer having the possibility to "earn" Bonuses.

In determining whether Eisses is actually entitled to a Bonus and (if applicable) the amount of such Bonus, the provisions of clauses 4 up to and including 7 shall apply, provided however that:

a. The Relevant Year shall be the Financial Year;

b. The Bonus (if any) shall be divided by 365 and the outcome thereof shall be multiplied by the number of days of the Financial Year up to the Assignment Date (exclusive); the outcome shall be the Bonus for the Financial Year.

## 9. Confidentiality

9.1. Eisses and CPL shall treat as strictly confidential, and shall not disclose to any person the existence, subject matter and contents of the Agreement. Eisses or CPL may however disclose such information to a third party if and to the extent:

a. required by the law of any relevant jurisdiction;

    b.    required by any recognised securities exchange or by any regulatory or governmental body;

    c.    the information is disclosed on a strictly confidential basis to that third party's professional advisers or auditors for the purpose of advising that third party in connection with this Agreement;

    d.    prior written consent to the disclosure has been given by the other Party; or

    e.    required to enable a Party to enforce its rights or remedies under this Agreement;

but any such information disclosed shall, where practicable, be disclosed only after consultation with the other Party.

## 10. Miscellaneous

10.1. All communications, notices and disclosures required or permitted by this Agreement shall be in writing and shall be sent by registered mail, by courier, by facsimile transmission or by e-mail to the following addresses unless and until a Party notifies the other Party in accordance with this clause 11.1 of another address in the Netherlands or in Canada.

    a.    If to CPL:
          Groeneveld Groep B.V.
          P.O. Box 777
          4200 AT Gorinchem
          Attn: Mr. J. Bruinenberg

    b.    If to Eisses:
          Jan Eisses
          7053 Twiss Road, R.R#3
          Campbellvile
          Ontario LOP 1 1B0
          In the Regional Municipality of Halton
          Canada

10.2. The rights and obligations of the Parties under this Agreement cannot be assigned or transferred by Eisses. In no event shall CPL be obligated to make any payment under this Agreement to any assignee or creditor of Eisses. Prior to the time of payment under this Agreement, neither Eisses nor his legal representative shall have any right by way of anticipation or otherwise to dispose of any interest under this Agreement.

10.3. The rights and obligations of CPL hereunder shall inure to the benefit of, and shall be binding upon, CPL and its successors and assigns, and the rights and obligations of Eisses hereunder shall inure to the benefit of and shall be binding upon, Eisses and his heirs, estate, executors, administrators and personal representatives.

*[signature]*     March 1st

10.4. Except as to any benefits that may be required to be funded under any benefit plan of CPL or pursuant to law, the obligations of CPL under this Agreement are not funded and CPL shall not be required to set aside or deposit in escrow any monies in advance of the due date for payment thereof to Eisses.

10.5. The costs for drafting this Agreement shall be borne by CPL. With regard to any other costs or expenses the Parties shall each pay their own costs, charges and expenses in relation to the negotiation, execution and implementation of this Agreement.

10.6. This Agreement (together with all documents referred to in it) constitutes the entire agreement and understanding of the Parties with respect to its subject matter and replaces and supersedes all prior agreements, arrangements, undertakings or statements regarding such subject matter.

10.7. Any variation of this Agreement is not valid unless and until it is in writing and has been signed by or on behalf of CPL and Eisses.

10.8. If part of this Agreement is or becomes invalid or non-binding, the Parties shall remain bound to the remaining part. In that event, the Parties shall replace the invalid or non-binding part by provisions that are valid and binding and that are valid and binding and that have, to the greatest extent possible, a similar effect as the invalid or non-binding part, given the contents and purpose of this Agreement.

10.9. A single or partial exercise of any right or remedy under this Agreement by CPL shall not preclude any other or further exercise of that right or remedy or the exercise of any other right or remedy. A waiver of any breach of this Agreement by CPL shall not be deemed to be a waiver of any subsequent breach.

10.10. This Agreement may be entered into by a Party by way of executing a separate counterpart, but it shall not be effective until each Party has executed at least one counterpart. Each counterpart, when executed, shall constitute an original, and all counterparts shall together constitute one and the same instrument.

## 11. Governing law

11.1. This Agreement shall be interpreted, construed and enforced in accordance with the laws of the Province of Ontario, Canada, without regard to the conflict of laws principle.

11.2. For the purpose of this Agreement, including the service of litigation and arbitration documents such as a writ of summons, a statement of claim, a legal judgment or arbitration award, the Parties elect to have their domiciles at the addresses referred to in clause 11.1.

## 12. Acknowledgement by Eisses

12.1. Eisses acknowledges that:

    a. his obligations under this Agreement are in addition to and not in substitution for any fiduciary duty that he may owe to CPL;

13/13

b. he has had sufficient time to review this Agreement thoroughly;

c. he has read and understands the terms of this Agreement and the obligations hereunder;

d. he has been given an opportunity to obtain independent legal advice concerning the interpretation and effect of this Agreement; and

e. he has received a fully executed original copy of this Agreement.

In witness whereof, agreed upon and signed in twofold by:

_____
CPL Systems Canada, Inc.
name: Jan Bruinenberg, director
place:
date:

_____
Jan Eisses
place: Fairbank AL
date: March 7th, 6